UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WALI MUHAMMAD,

                                        Plaintiff,

        -v-

THE CITY OF PEEKSKILL, P.O. CHRISTOPHER
VAZEOS, P.O. JOHN KOLESAR, P.O. ANDREW
POLAY, DET. CHARLES WASSIL, DET. RALPH
D'ALISO, SGT. PHILLIP BOYD and P.O.s JOHN
and JANE DOE #1-10, individually and in their
official capacities, (the names John and Jane Doe
being fictitious, as the true names are presently
unknown), THE COUNTY OF WESTCHESTER,
JANET DIFIORE, in her official capacity as
Westchester County District Attorney and JEANINE
PIRRO, individually,

                                        Defendants.

Case No. 06-CV-1899 (KMK)

OPINION AND ORDER

Appearances:

Rose M. Weber, Esq.
Rose M. Weber Law Office
New York, NY
*Counsel for Plaintiff*

William J. Florence, Jr., Esq.
Peekskill, NY
*Counsel for City of Peekskill* and *Peekskill Police Defendants*

KENNETH M. KARAS, District Judge:

Plaintiff Wali Muhammad ("Plaintiff") alleges that he was wrongfully arrested, detained, and prosecuted in violation of his civil rights and brings this action for compensatory damages, punitive damages, and attorneys' fees pursuant to 42 U.S.C. §§ 1983 ("Section 1983") and 1988.

Defendants Police Officer Christopher Vazeos ("Officer Vazeos"), Police Officer John Kolesar, Police Officer Andrew Polay, Detective Charles Wassil, Detective Ralph D'Aliso, and Sergeant Phillip Boyd (collectively, with Police Officers John and Jane Doe #1-10, the "Peekskill Police Defendants") move for summary judgment on the basis of qualified immunity. For the reasons stated in this Opinion, the Peekskill Police Defendants' Motion is granted in part and denied in part.

## I.  Background

### A.  Facts

Plaintiff is an African-American male who at the time of the alleged incident was a retired New York State corrections officer and a resident of the City of New York.  (Second Am. Compl. ¶¶ 6, 16.)  On the morning of March 25, 2005, Plaintiff was traveling northbound on U.S. Route 9 in New York State.  (*Id.* ¶ 15.)

According to Ossining Village Police ("Ossining Police") records, Ossining Police Officer Javier F. Lugo took a report of a menacing incident in connection with a traffic altercation on Route 9 in Ossining (also known there as South Highland Avenue).  (Decl. of William J. Florence, Jr. ("Florence Decl."), Ex. E.)  According to the report, the complainant told Officer Lugo that the driver of another vehicle had forced him to the side of the road, exited

his own car, lifted his shirt above his waist, and displayed a firearm.[1]  (*Id.*)  The report stated that the complainant was able to provide the plate number of the complained-of vehicle (BNC 7705) and to describe it as a black Toyota Avalon, and that a computer check of the license plate in the New York Statewide Police Information Network ("NYSPIN") returned a 1998 black Toyota. (*Id.*)  The Ossining Police thereupon broadcasted the vehicle information to surrounding jurisdictions.  (*Id.*)  The Peekskill Police Department register reflects that it was among the recipients of the broadcast.  (Florence Decl., Ex. D (Peekskill Police Register).)

Officer Vazeos was on patrol duty when he received a radio notification of the incident in Ossining, together with the vehicle information.  (Decl. of Christopher Vazeos ("Vazeos Decl.") 2.)  He spotted Plaintiff's vehicle headed northbound on Route 9 at Main Street, verified the plate number, called for backup, and executed a "heightened traffic stop" of Plaintiff's vehicle with lights and sirens at the Annsville Traffic Circle.  (*Id.*)

The Parties dispute the contents of the oral exchanges at the time of the traffic stop.  It is not disputed, however, that Plaintiff was wearing a firearm on his right hip, that he reported the firearm to Officer Vazeos, and that he told Officer Vazeos that he was a retired New York State

---

[1] Plaintiff gave deposition testimony that he was headed northbound on Route 9 through Ossining when the following events occurred: "It started off, the aggressive driver was tailgating me through the Town of Ossining, showed no effort to go around me, he just followed me through the Town of Ossining.  He pulled up on my passenger side.  He says to me, what is your problem, you need to learn how to drive.  So I turned to him and said, what is your problem.  He said it again, you need to learn how to drive, what is your problem.  So I pulled over to the right. Before I can even identify myself, he took one look at me and he took off.  So I proceeded on Route 9.  As I said before I was going to pick up my son and that's where I was stopped, where it says Fishkill North.  And I was detained."  (Dep. of Wali Muhammad ("Pl.'s Dep.") 9.)  Plaintiff stated that, in approaching the other driver, he opened his car door and stood up and that he was wearing a weapon on his right side, but that he did not lift his sweatshirt to showcase it.  (*Id.* 10-11.)

corrections officer.[2]  (Dep. of Wali Muhammad ("Pl's Dep.") 18-19; Vazeos Decl. 5.)  Plaintiff

had with him a driver's license, a vehicle registration card, and an insurance card.[3]  (Pl.'s Dep.

91.)  When Officer Vazeos ran the license plates against the Department of Motor Vehicles

("DMV") database prior to the traffic stop, however, the records showed a suspended

registration for failure to have insurance coverage.  (Vazeos Decl. ¶ 3; Peekskill Police Defs.'

Reply Mem. of Law ("Defs.' Reply Mem."), Ex. G, 4.)  Officer Vazeos thereupon arrested

Plaintiff for driving with a suspended registration (removing Plaintiff's gun and handcuffing

him) and transported him to Peekskill Police headquarters.  (Vazeos Decl. ¶¶ 3-4.)

At the Peekskill Police headquarters, Officer Vazeos spoke with Assistant District

Attorney Jeffrey Chartier ("ADA Chartier").  Vazeos says he told ADA Chartier about "the

hotline communique, the follow on Route 9, the backup car arrival, [the traffic stop,] and the

conversation with plaintiff and the actions of the driver and our return to Police Headquarters."

(Vazeos Decl. ¶ 5.)  He says he also told ADA Chartier about the suspended registration report

from the database, Plaintiff's possession of a gun and armor-piercing bullets, and Plaintiff's

status as a retired corrections officer carrying ID.  (*Id.*)

---

[2] The Second Amended Complaint alleges a legal conclusion as a fact, stating:  "As a
retired corrections officer, plaintiff WALI MUHAMMAD was, at all relevant times, authorized
by federal law to carry a firearm."  (Second Am. Compl. ¶ 17.)  The Court takes Plaintiff to
allege that he satisfied the various conditions of the Law Enforcement Officers Safety Act of
2004, which permits a qualified retired law enforcement officer to carry certain concealed
firearms.  *See* 18 U.S.C. § 926C.  For purposes of this Motion, the Court assumes that he did
satisfy these conditions.

[3] Plaintiff's papers repeatedly use the term "valid" to describe his license, registration,
and insurance card, but this again is a legal conclusion masquerading as a fact.  For purposes of
this Motion, the Court assumes Plaintiff to mean that the documents were unexpired on their
face.

ADA Chartier then instructed Officer Vazeos to charge Plaintiff with unlawful possession of a weapon and with driving with a suspended registration.  (*Id.* ¶ 6.)  Officer Vazeos complied with the instructions of ADA Chartier.  (*Id.* ¶ 7.)

Plaintiff was transported to the Westchester County jail and held there for four days.  (Second Am. Compl. ¶ 22.)  The County of Westchester, by ADA Chartier and other law enforcement officers ("County Defendants"), initiated criminal proceedings against Plaintiff and, between March 25, 2005 and December 15, 2005, required Plaintiff to make court appearances and to defend himself in criminal proceedings.  (*Id.* ¶¶ 23-24.)  On or about December 15, 2005, all charges against Plaintiff were dropped by motion of County Defendants.  (*Id.* ¶ 25.)

Plaintiff claims that as a result of these alleged facts, he has sustained "emotional distress, embarrassment, and humiliation, and deprivation of his constitutional rights."  (*Id.* ¶ 26.)

B.  Procedural History

Plaintiff filed his initial Complaint in this Action on March 10, 2006, naming Defendants City of Peekskill and Officer Vazeos, along with John Doe police defendants.[4]  On June 30, 2006, Plaintiff filed an Amended Complaint, adding the names of several police officers, as well as that of ADA Chartier (who Plaintiff alleges gave advice "contributing to" Plaintiff's arrest).  On August 5, 2006, the Parties submitted to the Court a stipulation of discontinuance with prejudice as to ADA Chartier, which was so ordered by Judge McMahon on August 17, 2006.

_____

[4] The original complaint mistakenly identified Officer Vazeos's last name as "Vargas." This was subsequently corrected in Plaintiff's Amended Complaint.

(Dkt. No. 7.)[5]

On September 21, 2006, Plaintiff filed a "Consent Motion" seeking to further "Amend/Correct" the Amended Complaint. (Dkt. No. 10.) The Motion was accompanied by a Declaration of Rose M. Weber, Plaintiff's Counsel, in which she explained that she was "advised by William J. Florence, Jr., Esq., counsel for [the Peekskill Police Defendants and the City of Peekskill], that defendants intend to take the position that they were specifically directed to arrest plaintiff by Assistant District Attorney Jeffrey Chartier." (Dkt. No. 11, Decl. of Rose M. Weber ¶ 2.) Neither ADA Chartier nor any of the County Defendants was then a party to the Action (because Plaintiff had already executed a stipulation of dismissal against ADA Chartier and the County Defendants had not yet been added), and so the consent was given only by the Peekskill Police Defendants and the City of Peekskill. On the basis of the consent, permission to file a Second Amended Complaint was granted and such a Second Amended Complaint adding the County Defendants was filed on November 7, 2006.[6]

This case was initially managed pursuant to Judge Colleen McMahon's Individual Practices, which provide for a special procedure by which defendants may seek qualified immunity.[7] The Peekskill Police Defendants' Motion was not filed on the Court's Electronic Case Management (ECF) system until October 2007, but it was initially prepared while the case

---

[5] The one-page stipulation, signed by Rose M. Weber, counsel for Plaintiff, and by Shannon S. Brady, counsel for ADA Chartier and for the County Defendants, stated only that the action "is discontinued with prejudice as against Defendant Chartier, without costs, fees or disbursements to either party as against the other." (Dkt. No. 7.)

[6] By separate Opinion and Order, the Court today has granted the Motion to Dismiss filed by County Defendants.

[7] This case was initially assigned to Judge McMahon. On August 6, 2007, it was reassigned to this Court.

was still assigned to Judge McMahon. The Motion purports to seek dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), but Judge McMahon's Individual Practices clearly specify that the qualified immunity motion is to be decided pursuant to the summary judgment standard of Rule 56. Indeed, the Peekskill Police Defendants' Memorandum of Law was submitted with a declaration and evidence reflecting counsel's understanding that he was actually seeking summary judgment. Plaintiff's reply discusses summary judgment and contends the Motion should be denied on grounds of disputed issues of fact. Accordingly, the Court treats this Motion as one for summary judgment and finds that all Parties had a reasonable opportunity to present material pertinent to the Motion. *See* Fed. R. Civ. P. 12(d).

Because this Motion was filed pursuant to Judge McMahon's qualified immunity rule by which Plaintiff was not permitted discovery, the Court accepts as true the allegations in the Second Amended Complaint and in Plaintiff's Memorandum of Law.[8]

## II. Discussion

### A. Standard of Review

Summary judgment may be granted where it is shown that there is "no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Segal v. City of New York*, 459 F.3d 207, 211 (2d Cir. 2006). Where the movant shows prima facie entitlement to summary

---

[8] Under Judge McMahon's Individual Practices, the Peekskill Police Defendants were allowed to depose Plaintiff.

judgment, "the burden shifts to the nonmovant to point to record evidence creating a genuine issue of material fact." *Salahuddin v. Goord*, 467 F.3d 263, 273 (2d Cir. 2006). "[T]he nonmovant cannot rest on allegations in the pleadings and must point to specific evidence in the record to carry its burden on summary judgment." *Id.*; *see also McPherson v. N.Y. City Dep't of Educ.*, 457 F.3d 211, 215 n.4 (2d Cir. 2006) ("[S]peculation alone is insufficient to defeat a motion for summary judgment."); *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) ("[The non-movant] 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986))).

The materiality of the facts considered by the Court will be governed by substantive law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At summary judgment, the Court is not charged with weighing the evidence and determining its truth, but with determining whether there is a genuine issue for trial. *See Westinghouse Elec. Corp. v. N.Y. City Transit Auth.*, 735 F. Supp. 1205, 1212 (S.D.N.Y. 1990); *Castro v. Metro. Transp. Auth.*, No. 04-CV-1445, 2006 WL 1418585, at *2 (S.D.N.Y. May 23, 2006). A court's goal should be to "isolate and dispose of factually unsupported claims." *Celotex Corp.*, 477 U.S. at 323-24.[9]

_____

[9] In keeping with the Supreme Court's observation that one of the purposes of the qualified immunity standard is to protect public officials from the "broad-ranging discovery" that can be "peculiarly disruptive [to] effective government, *Harlow v. Fitzgerald*, 457 U.S. 800, 817 (1982), Judge McMahon's Individual Practices require a motion for summary judgment on the ground of qualified immunity to be served and filed at the earliest possible opportunity. As soon as notice of a motion raising the issue of qualified immunity is filed, all discovery is stayed, except for the plaintiff's deposition. Here, the Parties' Memoranda of Law demonstrate their awareness of and compliance with Judge McMahon's Individual Practices. (Peekskill Police Defs.' Mem. of Law ("Defs.' Mem") 5 (requesting that the Court grant the Defendants' motion for summary judgment); Pl.'s Mem. of Law in Opp. to Peekskill Police Defs.' Mot. for Qualified Immunity ("Pl.'s QI Mem.") 1 n.2 (noting that the Motion was before the Court based on Judge

B.  Peekskill Police Defendants' Claim of Qualified Immunity

The Second Amendment Complaint alleges claims under Section 1983 premised on:  (1) deprivation of federal civil rights; (2) false arrest; (3) malicious prosecution; (4) malicious abuse of process; (5) violation of equal protection; and (6) failure to intervene.  A seventh cause of action states a claim for municipal liability.

The Peekskill Police Defendants invoke qualified immunity, a doctrine that reflects the "injustice, particularly in the absence of bad faith, of subjecting to liability an officer who is required, by the legal obligations of his [or her] position, to exercise discretion."  *See Scheuer v. Rhodes*, 416 U.S. 232, 240 (1974).  It operates to shield a government employee sued "individually" (in a personal capacity) from suits for damages under Section 1983 unless the complained-of conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known."  *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Neu v. Corcoran*, 869 F.2d 662, 665 (2d Cir. 1989) (applying *Harlow*); *Walentas v. Lipper*, 862 F.2d 414, 421 (2d Cir. 1988) (same).  Because the privilege is "*immunity from suit* rather than a mere defense to liability," *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985), the Supreme Court "repeatedly ha[s] stressed the importance of resolving immunity questions at the earliest possible stage in litigation."  *Hunter v. Bryant*, 502 U.S. 224, 227 (1991); *see also Cowan ex rel. Estate of Cooper v. Breen*, 352 F.3d 756, 760 (2d Cir. 2003) ("[A]s the Supreme Court has emphasized,

McMahon's Individual Practices).)  Therefore, it is proper for the Court to decide this as a Motion for Summary Judgment.  *See Groden v. Random House, Inc.*, 61 F.3d 1045, 1052-53 (2d Cir. 1995) (noting that the "essential inquiry" in determining whether it is proper to convert a motion to dismiss to a summary judgment motion is whether the party "'recognized the possibility that the [motion to dismiss] might be converted into one for summary judgment or was taken by surprise'" (quoting *In re G. & A. Books, Inc.*, 770 F.2d 288, 295 (2d Cir. 1985))).

the qualified immunity issue should be resolved early in the proceedings since qualified immunity protects an officer from suit.").

The Supreme Court has articulated a two-part test for determining the applicability of qualified immunity. *See Saucier v. Katz*, 533 U.S. 194, 200 (2001); *Anderson v. Creighton*, 483 U.S. 635 (1987); *accord Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 250 (2d Cir. 2001). The first inquiry is "whether a constitutional right would have been violated on the facts alleged." *Saucier*, 533 U.S. at 200. The second inquiry, reached only if the violation is established, is "whether the right was clearly established." *Id.*; *see also Scott v. Harris*, 127 S.Ct. 1769, 1774 (2007) (applying the two-part inquiry); *Walczyk v. Rio*, 496 F.3d 139, 154 (2d Cir. 2007) (same).

The Peekskill Police Defendants claim qualified immunity on the theory that they acted reasonably – that is, that no constitutional right was violated on the facts alleged – at each of the three stages of events to which Plaintiff's various claims could attach: (1) executing the initial traffic stop of Plaintiff; (2) arresting Plaintiff following the traffic stop for a suspended registration and transporting him in custody to Peekskill Police headquarters; and (3) charging Plaintiff based on illegal possession of a handgun. The Court will address each claim in turn.

1. Initial Stop of Plaintiff's Car

Plaintiff has not disputed that the Peekskill Police Defendants received a broadcast from the Ossining Police about a menacing incident that provided a description matching Plaintiff's vehicle. The Supreme Court has expressly addressed this scenario, concluding that "if a flyer or bulletin has been issued on the basis of articulable facts supporting a reasonable suspicion that the wanted person has committed an offense, then reliance on that flyer or bulletin justifies a

stop to check identification, to pose questions to the person, or to detain the person briefly while attempting to obtain further information." *United States v. Hensley*, 469 U.S. 221, 232 (1985) (internal citations omitted). Indeed, Plaintiff concedes that there was probable cause for the initial stop of his car (Pl.'s Mem. of Law in Opp. to Peekskill Police Defs.' Mot. for Qualified Immunity ("Pl.'s QI Mem.") 3), and so qualified immunity attaches on that issue. Thus, the Peekskill Police Defendants' motion as to this claim is granted.

### 2. Initial Arrest of Plaintiff for Suspended Registration

The Peekskill Police Defendants accept for purposes of this Motion that the detention and transport of Plaintiff to Peekskill Police headquarters following the traffic stop constituted an arrest, (Defs.' Mem. 2). *See Posr v. Doherty*, 944 F.2d 91, 99 (2d Cir. 1991) ("The issue of precisely when an arrest takes place is a question of fact.").

Officer Vazeos has submitted a declaration that, having executed the stop of Plaintiff, he recovered a gun and determined that the car had a suspended registration after having the plates run through the DMV database. (Vazeos Decl. ¶ 3; Defs.' Reply Mem, Ex. G.) He advised the Plaintiff that he was under arrest for a suspended registration, and that the Ossining Police Department would come to investigate the alleged menacing incident. (Vazeos Decl. ¶ 3.) Plaintiff concedes that "[h]ad the officers simply turned [the Plaintiff] over to Ossining" in response to the Ossining Police broadcast, "this case would not be before the Court." (Pl's QI Mem. 3.) However, Plaintiff claims that there are "hotly contested" issues of fact with regard to both the initial arrest of Plaintiff for suspended registration for failure to have insurance coverage, and the Peekskill Police Defendants' subsequent charge against Plaintiff for unlawful possession of a weapon. (*Id.*)

A law enforcement officer has probable cause for arrest when he has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). To be entitled to qualified immunity, the officer needs to show only "'arguable' probable cause." *Zellner v. Summerlin*, 494 F.3d 344, 369 (2d Cir. 2007). Arguable probable cause exists when "'a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in the light of well established law.'" *Id.* (quoting *Cerrone v. Brown*, 246 F.3d 194, 202-03 (2d Cir. 2001); *see also Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) ("Arguable probable cause exists 'if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'" (quoting *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991))). Thus, to determine whether the officer acted with arguable probable cause, "[a] court must evaluate the objective reasonableness of the officers' conduct 'in light of . . . the information the . . . officers possessed.'" *Cerrone*, 246 F.3d at 202 (quoting *Anderson*, 483 U.S. at 641).

Here, the Peekskill Police Defendants reasonably relied on the DMV records showing that the Plaintiff's registration was suspended. *See United States v. Santa*, 180 F.3d 20, 27 (2d Cir. 1999) (holding that arresting officers' reliance on NYSPIN record was reasonable); *Mayer v. City of New Rochelle*, No. 01-CV-4443, 2003 WL 21222515, at *4-5 (S.D.N.Y. May 27, 2003) (same); *see also United States v. Colon*, 250 F.3d 130, 135 (2d Cir. 2001) ("Under the collective or imputed knowledge doctrine, an arrest or search is permissible where the actual

arresting or searching officer lacks the specific information to form the basis for probable cause or reasonable suspicion but sufficient information to justify the arrest or search was known by other law enforcement officials initiating or involved with the investigation.").  Plaintiff has not shown, let alone alleged, that the DMV records were inaccurate, or that even if they were inaccurate, the Peekskill Police Defendants knew or suspected that they might be inaccurate, or that the Peekskill Police Defendants were responsible for any inaccuracies in these records. Accordingly, the Peekskill Police Defendants did not violate Plaintiff's rights by acting on the information in the DMV records.  *See Santa*, 180 F.3d at 27 (noting that arresting officers had no reason to know about court clerk's error in failing to vacate arrest warrants).

Plaintiff contends it is "hotly contested" whether Plaintiff's registration was suspended based on a lapse in insurance.  (Pl.'s QI Mem. 3.)  In particular, Plaintiff claims that he presented Officer Vazeos with unexpired registration and insurance cards.  (Pl.'s Dep. 91.)  However, even assuming that Plaintiff were to prove that he had a valid insurance card, this does not refute the Peekskill Police Defendants' reasonable belief at the time of the arrest that probable cause to arrest existed on the basis of the DMV records.  *See Saucier*, 533 U.S. at 206 ("Officers can have reasonable, but mistaken, beliefs as to the facts establishing the existence of probable cause[,] . . . and in those situations courts will not hold that they have violated the Constitution."); *Caldarola*, 298 F.3d at 162 ("[I]n situations where an officer may have reasonably but mistakenly concluded that probable cause existed, the officer is nonetheless entitled to qualified immunity." (internal citations omitted)); *United States v. Owens*, 142 F. Supp. 2d 255, 263-64 (D. Conn. 2001) (holding that officer's "mistaken reliance on the Department of Motor Vehicle's computer records" was objectively reasonable).  On this point, the Court notes that in addition to

Officer Vazeos's declaration, the Peekskill Police Defendants have produced the DMV records indicating that Plaintiff had no insurance from August 21, 2004 until March 21, 2006 (a date range that includes March 25, 2005, the day of the Plaintiff's arrest). (Defs.' Reply Mem. 7, Ex. G.)

Whether the DMV database was accurate is immaterial, and Plaintiff has not produced – nor suggested the existence of – any evidence raising a triable issue of fact as to the database contents or the source of any error in the database. *See Moscatelli v. City of Middletown*, 675 N.Y.S.2d 639, 640 (App. Div. 1998) ("Because the plaintiff failed to produce evidence in admissible form to demonstrate the existence of an issue of fact as to the accuracy of the information contained in the NYSPIN computer or as to whether it was erroneously retained through the fault of the system, and she offered no explanation for her failure to come forward with such evidence, the defendant's motion should have been granted."). Thus, "the officers are plainly entitled to qualified immunity – even if probable cause was lacking because of an error in the records that was the fault of the system." *Mayer*, 2003 WL 21222515, at *4. Accordingly, the Court grants the Peekskill Police Defendants' summary judgment motion as to this claim.

### 3. Unlawful Possession of Firearm Charges

As to the last issue, the unlawful possession of firearm charges pressed against Plaintiff, the Peekskill Police Defendants claim that Officer Vazeos was advised by ADA Chartier to charge Plaintiff with unlawful possession of a firearm. (Vazeos Decl. ¶ 6.) Indeed, Plaintiff seems to concede as much, noting in his Second Amended Complaint that ADA Chartier "provided advice that contributed to the unlawful arrest of plaintiff WALI MUHAMMAD." (Second Am. Compl. ¶ 20.) Normally, it is reasonable for law enforcement officers to rely on a

prosecutor's advice in bringing charges. *See Dale v. Kelley*, 908 F. Supp. 125, 137-38 (W.D.N.Y. 1995) (noting that police officers must be able to rely on advice of prosecutors and holding that defendant was entitled to qualified immunity where he was "acting at the direction of an Assistant District Attorney"), *aff'd*, 95 F.3d 2 (2d Cir. 1996); *Strawn v. Holohan*, No. 04-CV-1292, 2008 WL 65586, at *6 (N.D.N.Y. Jan. 4, 2008) (finding fact that officer consulted with the District Attorney's office a factor supporting the reasonableness of the officer's actions).

However, Plaintiff argues that "defendants made numerous false statements in the reports that they prepared concerning the incident." (Pl.'s QI Mem. 4.) For this argument to prevail, Plaintiff must "demonstrate that the misstatements and omissions were necessary to the finding of probable cause," *Escalera*, 361 F.3d at 743 (internal quotation marks omitted). In other words, Plaintiff must show the identified factual disputes that would be material to resolving the issue of whether a reasonable officer would believe that probable cause existed. *See id.* at 744 ("If there remains an objective basis to support arguable probable cause, remaining factual disputes are not material to the issue of qualified immunity and summary judgment should be granted to the defendant on the basis of qualified immunity.").

On this point, Plaintiff has identified several areas where Officer Vazeos's arrest report contains alleged falsehoods. For example, Plaintiff testified at his deposition that he never said to Officer Vazeos that he was "on the job" at the time (Pl.'s Dep. 19), nor that he knew he was not authorized to carry the firearm and, in fact, was on his way to get a permit from the police (Pl.'s Dep. 22). Yet, Officer Vazeos's report suggests that, in fact, Plaintiff claimed he was on the job (Florence Decl., Ex. B, 2), and that Plaintiff admitted he did not have, but was on his way

to obtain, a permit to carry the firearm.  (*Id.* 3.)

The Peekskill Police Defendants claim that the dispute over these competing statements is irrelevant because Plaintiff offers no evidence that any of the allegedly false statements was relayed to ADA Chartier and, therefore, that they affected the advice upon which the Peekskill Police Defendants relied in charging Plaintiff with illegal weapons possession.  Indeed, as the Peekskill Police Defendants note, Plaintiff has not testified that he was aware of any of the details of the conversation between Officer Vazeos and ADA Chartier.  However, taking Plaintiff's allegations as true, it is not implausible to believe that with the benefit of discovery, Plaintiff might be able to prove that Officer Vazeos told ADA Chartier about the statements he claims Plaintiff made about the firearm and his status as a law enforcement officer.  And it is far from inconceivable that ADA Chartier's advice to charge Plaintiff with illegal weapons possession would be affected by allegedly false information that Plaintiff admitted he was not licensed to carry the firearm or that he falsely claimed that he was "on the job" when carrying the firearm.  Yet, these facts would solely be in the possession of the Peekskill Police Defendants and have not yet been tested by Plaintiff in discovery.  Thus, while the Court is cognizant that claims of qualified immunity should be decided as early as possible in a lawsuit, the Court concludes that summary judgment at this time would be inappropriate given that discovery has to date been one-sided.  *See Weyant*, 101 F.3d at 858 (holding that where officers' version of facts is "sharply disputed . . . the matter of the officers' qualified immunity therefore cannot be resolved as a matter of law"); *Crews v. County of Nassau*, No. 06-CV-2610, 2007 WL 4591325, at *18 (E.D.N.Y. Dec. 27, 2007) ("[W]hile the Court again recognizes that the qualified immunity issue should be decided at the earliest juncture where possible, defendants' motion to

dismiss all of plaintiffs' claims on the basis of qualified immunity is denied, given the allegations in the complaint."). Of course, if after additional discovery the Peekskill Police Defendants believe that Plaintiff has failed to establish that these allegedly false statements were shared with ADA Chartier, or were material to his advice to the Peekskill Police Defendants, they may again move for summary judgment on qualified immunity grounds. Until more facts are developed, however, the Court denies the Peekskill Police Defendants' Summary Judgment Motion as to this claim.

### III. Conclusion

Because the Peekskill Police Defendants have shown they are entitled to qualified immunity as to the initial stop of Plaintiff and the initial decision to arrest Plaintiff, their Motion for Summary Judgment on the basis of qualified immunity is granted as to those claims. However, because there remain potential facts in dispute as to the weapons possession charge, the Peekskill Police Defendants' Motion for Summary Judgment is denied without prejudice to renewal after discovery is complete.

The Clerk of the Court is respectfully directed to terminate the motion (Dkt. No. 36).


SO ORDERED.

Dated:          September 30, 2008
               White Plains, New York

                              KENNETH M. KARAS
                              UNITED STATES DISTRICT JUDGE


17

Service List by ECF:

Rose M. Weber, Esq.
225 Broadway, Suite 1608
New York, NY 10007
rose_weber@juno.com

William J. Florence, Jr., Esq.
One Peekskill Place, Suite 300
Peekskill, NY 10566
williamflorence@mac.com