UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

WALI MUHAMMAD,

        Plaintiff,

 -v-

THE CITY OF PEEKSKILL, P.O. CHRISTOPHER VAZEOS, P.O. JOHN KOLESAR, P.O. ANDREW POLAY, DET. CHARLES WASSIL, DET. RALPH D'ALISO, SGT. PHILLIP BOYD and P.O.s JOHN and JANE DOE #1-10, individually and in their official capacities, (the names John and Jane Doe being fictitious, as the true names are presently unknown), THE COUNTY OF WESTCHESTER, JANET DIFIORE, in her official capacity as Westchester County District Attorney and JEANINE PIRRO, individually,

        Defendants.

Case No. 06-CV-1899 (KMK)

<u>OPINION AND ORDER</u>

---

<u>Appearances</u>:

Rose M. Weber, Esq.
Rose M. Weber Law Office
New York, NY
*Counsel for Plaintiff*

William J. Florence, Jr., Esq.
Peekskill, NY
*Counsel for City of Peekskill* and *Peekskill Police Defendants*

Shannon S. Brady, Esq.
Westchester County Attorney's Office
White Plains, NY
*Counsel for Defendants County of Westchester, Janet DiFiore* and *Jeanine Pirro*

KENNETH M. KARAS, District Judge:

Plaintiff Wali Muhammad ("Plaintiff") alleges that he was wrongfully arrested, detained, and prosecuted in violation of his civil rights and brings this action for compensatory damages, punitive damages, and attorneys' fees pursuant to 42 U.S.C. §§ 1983 ("Section 1983") and 1988.

Defendants County of Westchester, Janet DiFiore (in her official capacity as Westchester County District Attorney), and Jeanine Pirro (in her individual capacity) (collectively, "County Defendants") move for dismissal. For the reasons stated in this Opinion, the County Defendants' Motion is granted.

I. Background

A. Facts

For purposes of this Motion to Dismiss, the Court accepts as true all facts alleged by Plaintiff in his Second Amended Complaint, which are as follows:

Plaintiff is an African-American male who was at the time of the alleged incident a retired New York State corrections officer and a resident of the City of New York. (Second Am. Compl. ("SAC") ¶¶ 6, 16.) On March 25, 2005, at approximately 11:15 a.m., Plaintiff was traveling northbound on Route 9 in the vicinity of the Annsville Traffic Circle in or near the City of Peekskill, New York. (*Id.* ¶ 15.) At that time, Peekskill Police Defendants executed a stop of Plaintiff's vehicle.[1] (*Id.* ¶ 18.) As a retired corrections officer, Plaintiff was authorized by

---

[1] Peekskill Police Defendants are Police Officer Christopher Vazeos, Police Officer John Kolesar, Police Officer Andrew Polay, Detective Charles Wassil, Detective Ralph D'Aliso, Sergeant Phillip Boyd, and Police Officers John and Jane Doe #1-10. They move separately for summary judgment on grounds of qualified immunity, a motion the Court today has granted in part and denied in part in a separate opinion and order.

federal law to carry a firearm.[2]  (*Id*. ¶ 17.)  The Peekskill Police Defendants nevertheless placed Plaintiff under arrest for criminal possession of a weapon, notwithstanding their alleged knowledge that they lacked probable cause to do so.[3]  (*Id*. ¶ 19.)  Westchester County Assistant District Attorney Jeffrey Chartier ("ADA Chartier") provided advice that "contributed" to this arrest.[4]  (*Id*. ¶ 20.)  From the point of the stop, Peekskill Police Defendants transported Plaintiff to the Peekskill Police Department headquarters and then to the Westchester County jail, where

---

[2] The Second Amended Complaint alleges a legal conclusion as a fact, stating: "As a retired corrections officer, plaintiff WALI MUHAMMAD was, at all relevant times, authorized by federal law to carry a firearm." (SAC. ¶ 17.)  The Court takes Plaintiff to allege that he satisfied the various conditions of the Law Enforcement Officers Safety Act of 2004 that permit a qualified retired law enforcement officer to carry certain concealed firearms.  18 U.S.C. § 926C.

[3] The Second Amended Complaint states in full: "Defendants handcuffed plaintiff WALI MUHAMMAD and placed him under arrest for criminal possession of a weapon, despite defendant's [sic] knowledge that they lacked probable cause to do so."  (SAC. ¶ 19.)  It is not clear whether Plaintiff has misplaced the apostrophe and means to suggest that all Defendants knew the Peekskill Police Defendants lacked probable cause to make the arrest, or whether Plaintiff intends to refer in the singular to a particular Defendant whom he does not identify.  The ambiguity makes no difference to the resolution of this Motion.

[4] The meaning of the phrase "provided advice that contributed to the unlawful arrest" is facially inscrutable to the Court.  For purposes of this Motion to Dismiss, the Court assumes the most logical construction from the face of the Second Amended Complaint:  that ADA Chartier was consulted at the time of the traffic stop and provided an arrest instruction prior to Plaintiff being transported to the Peekskill Police Station.
Evidence submitted in support of the Peekskill Police Defendants' separate summary judgment motion suggests a different sequence of events.  According to the Peekskill Police Department Complaint Report, Plaintiff was pulled over and initially arrested pursuant to a broadcast report from a neighboring police department about a "road rage incident" that had occurred just minutes before, and that identified Plaintiff's vehicle by make, model, and license plate.  The arresting officer's report states:  "At police headquarters I spoke with ADA Jeffrey Chartier and was advised to process and charge Muhammad with criminal possession of a weapon 3d."  The Court draws no inference from this evidence but uses it to construct an alternative sequence of events within the language of the Second Amended Complaint against which to measure the Motion to Dismiss.  However, it bears emphasizing that this alternate scenario makes no difference to the resolution of the County Defendants' Motion to Dismiss considered here.

3

they held him in custody for four days. (*Id.* ¶ 22.) County Defendants initiated criminal proceedings against Plaintiff and, between March 25, 2005, and December 15, 2005, required Plaintiff to make court appearances and to defend himself in criminal proceedings. (*Id.* ¶ 23-24.) Plaintiff further alleges that County Defendants knew that they "lacked probable cause" to initiate criminal proceedings. (*Id.* ¶ 23.) On or about December 15, 2005, all charges against Plaintiff were dropped by motion of County Defendants. (*Id.* ¶ 25.)

Plaintiff claims that as a result of these alleged facts, he has sustained "emotional distress, embarrassment, and humiliation, and deprivation of his constitutional rights." (*Id.* ¶ 26.) Specifically, the Second Amended Complaint enumerates causes of action for: (1) deprivation of First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights in violation of Section 1983; (2) false arrest in violation of Section 1983; (3) malicious prosecution in violation of Section 1983; (4) malicious abuse of process under Section 1983; (5) deprivation of Fourteenth Amendment equal protection rights in violation of Section 1983; (6) failure to intervene; and (7) municipal liability.

B. Procedural History

Plaintiff filed his initial Complaint in this action on March 10, 2006, naming Defendants City of Peekskill and Police Officer Christopher Vargas, along with John Doe police defendants. On June 30, 2006, Plaintiff filed an Amended Complaint, adding the names of several police officers as well as that of ADA Chartier (who Plaintiff alleges gave advice "contributing to" Plaintiff's arrest). On August 5, 2006, the Parties submitted to the Court a stipulation of discontinuance with prejudice as to ADA Chartier, which was signed by Judge Colleen

4

McMahon so as to become an order on August 17, 2006. (Dkt. No. 7.)[5]

On August 24, 2006, Magistrate Judge Mark D. Fox, to whom this matter was referred for general pretrial matters, held a status conference with attorneys for Plaintiff and for the City of Peekskill and the Peekskill Police Defendants. During the conference, the issue arose of whether Plaintiff had a claim against the assistant district attorney who Plaintiff alleged had provided advice to the Peekskill Police Defendants. Counsel for Plaintiff, Ms. Weber, explained:

> I did add [ADA Chartier]. I served him. I had a call from counsel for the DA's office who called my attention to a statement in the documents supplied by [counsel for the City of Peekskill and the Peekskill Police Defendants] Mr. Florence in which the officer said: "We arrested him, we cuffed him, we took him back to the precinct, *then* we called the ADA."

(Hr'g Tape of Aug. 24, 2006.)

On September 21, 2006, Plaintiff filed a "Consent Motion" seeking to further "Amend/Correct" the Amended Complaint. (Dkt. No. 10.) The Consent Motion was accompanied by a Declaration of Rose M. Weber, Plaintiff's Counsel, in which she explained that she was "advised by William J. Florence, Jr., Esq., counsel for [the City of Peekskill and the Peekskill Police Defendants], that [D]efendants intend to take the position that they were specifically directed to arrest plaintiff by Assistant District Attorney Jeffrey Chartier." (Decl. of Rose M. Weber ¶ 2.) Neither ADA Chartier nor any of the County Defendants was then party to the Action (because Plaintiff had already executed a stipulation of dismissal against ADA

---

[5] The one-page stipulation, signed by Rose M. Weber, counsel for Plaintiff, and by Shannon S. Brady, counsel for ADA Chartier and for the County Defendants, stated only that the action "is discontinued with prejudice as against Defendant Chartier, without costs, fees or disbursements to either party as against the other." (Dkt. No. 7.)

Chartier, and the County Defendants had not yet been added), and so the consent was given only by the City of Peekskill and the Peekskill Police Defendants. On the basis of the consent, permission to file a Second Amended Complaint was granted and such a Second Amended Complaint adding the County Defendants was filed on November 7, 2006.

Judge McMahon, to whom this case was initially assigned, resolved several issues as to the capacity in which various Parties were being sued in an Order dated January 22, 2007.[6] (Dkt. No. 21.) The Second Amended Complaint sets forth seven claims for relief, although, subsequent to its filing, Plaintiff has acknowledged that only the Seventh Claim, for municipal liability, is asserted against County Defendants.[7] (Pl.'s Mem. of Law in Opp. to County Defs.' Renewed Mot. to Dismiss ("Pl.'s Opp.") 7.)

On February 21, 2007, County Defendants moved to dismiss the Second Amended Complaint pursuant to Rule 12(b)(6); in addition, on March 23, 2007, County Defendants filed a supplemental memorandum of law asserting qualified immunity on behalf of Defendant Jeanine Pirro. On August 6, 2007, the case was reassigned to this Court.

II. Discussion

A. Standard of Review

County Defendants seek dismissal of the Second Amended Complaint under Federal

---

[6] Specifically, Judge McMahon substituted Defendant DiFiore in her official capacity for Defendant Pirro in her official capacity and made clear that Defendant Pirro was also sued in her individual capacity.

[7] It makes no sense to assert a claim for "municipal liability" against Defendant Pirro in her individual capacity. The reading of the Second Amended Complaint most generous to Plaintiff is that he intends to assert a claim for failure to train in violation of Section 1983 against Defendant Pirro.

6

Rule of Civil Procedure 12(b)(6) on the grounds that it fails to state a claim. The Supreme Court has clarified the standard for review on a Rule 12(b)(6) motion to dismiss. *See Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007). In *Twombly*, the Court emphasized that "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* at 1965 (citation omitted), and "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 1969. Plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974; *see also Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (noting that *Twombly* requires a "flexible plausibility standard, which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." (internal quotation marks omitted)). If Plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Twombly*, 127 S. Ct. at 1974.

For purposes of a motion to dismiss, the Court accepts as true Plaintiff's allegations, and draws all plausible inferences in Plaintiff's favor. *See City of N.Y. v. Beretta U.S.A. Corp.*, 524 F.3d 384, 392 (2d Cir. 2008). At this stage, however, the Court is not concerned with weighing the evidence that would be presented at trial. *See Chosun Int'l, Inc. v. Chrisha Creations, Ltd.*, 413 F.3d 324, 327 (2d Cir. 2005).

B.  Preclusive Effect of Dismissal with Prejudice as to ADA Chartier

County Defendants' threshold contention is that all claims against them are barred because they were brought and voluntarily dismissed by Plaintiff with prejudice against ADA Chartier. County Defendants explain that the Amended Complaint sued Chartier in his official capacity. (Am. Compl. ¶ 10.) Indeed, the Amended Complaint alleged that Chartier was acting

7

"in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of . . . the County of Westchester." (*Id.* ¶ 11.) Because ADA Chartier was sued in his official capacity, all claims brought against him are deemed to have been brought against the municipality. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) (stating that "the real party in interest in an official-capacity suit is the governmental entity and not the named official" and that "[s]uits against state officials in their official capacity therefore should be treated as suits against the state"); *Reynolds v. Giuliani*, 506 F.3d 183, 191 (2d Cir. 2007) ("An official capacity suit against a public servant is treated as one against the governmental entity itself."); *State Employees Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 85 n.8 (2d Cir. 2007) (stating that official capacity suit "'is not a suit against the official personally, for the real party in interest is the entity'" (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985))). Thus, County Defendants reason that all claims against them should be deemed to have been dismissed with prejudice by virtue of the voluntary dismissal of ADA Chartier. *See Samuels v. N. Telecom, Inc.*, 942 F.2d 834, 836 (2d Cir. 1991) ("A stipulation dismissing an action with prejudice can have the preclusive effect of *res judicata*."); *see also Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 385 n.12 (2d Cir. 2003) (applying *Samuels*); *Waldman v. Vill. of Kiryas Joel*, 39 F. Supp. 2d 370, 377 (S.D.N.Y. 1999) ("[A] stipulation of dismissal with prejudice is considered a final judgment on the merits for purposes of res judicata." (citing *Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343, 345 (2d Cir. 1995)); *Schenk v. Mine Mgmt. Co.*, No. 89-CV-97, 1997 WL 31400, at *2 n.15 (N.D.N.Y. Jan. 23, 1997) (stating "[t]here is no doubt" that voluntary dismissal with prejudice is an adjudication on the merits giving rise to res judicata).

Plaintiff spends less than one page of briefing responding to this argument and offers no

8

case law that would provide foundation for his opposition. Instead, Plaintiff states in conclusory fashion: "There is no legal basis for defendants' assertion that plaintiff was obliged to assert a failure to train claim in the Amended Complaint even though the County Defendants were not parties at the time." (Pl.'s Opp. 2-3.)

There is, indeed, a legal basis. "The stipulation dismissing plaintiff's 'action' with prejudice must be read to have dismissed *all* claims," which precludes Plaintiff later raising "those claims that would have been decided had the first action been fully litigated." *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986). This is true with respect to "'all relevant issues which could have been but were not raised and litigated in the suit.'" *Samuels*, 942 F.2d at 836 (quoting *Nemaizer*, 793 F.2d at 61). Thus, Plaintiff is precluded from raising his original claims, as well as his new failure to train claim, which plainly could have been brought in the Amended Complaint. *Id.* at 837 ("[A] dismissal *with prejudice* was a risky choice if future litigation was contemplated, since it would wipe out all claims that *could* have been asserted in the dismissed suit." (emphasis in original)); *see also Resources N.E. of Long Island, Inc. v. Town of Babylon*, 28 F. Supp. 2d 786, 792 (E.D.N.Y. 1998) (applying *Samuels* to find that once a claim was brought to its final conclusion, "all other claims arising out of the same transaction or series of transactions became barred, even if . . . based on different theories, seek[ing] different remedies, and alleg[ing] different facts").

Further, Plaintiff is barred from making claims against the same party and those in privity with that party. *See Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 367-68 (2d Cir. 1995) (stating that privity precludes relitigation of a claim against a new defendant with "sufficiently close relationship to the original"); *see also Vets N., Inc. v. Libutti*,

9

No. 01-CV-7773, 2003 WL 21542554, at *11 (E.D.N.Y. Apr. 21, 2003) ("[C]ontemporary courts have broadly construed the concept of privity, far beyond its literal and historic meaning, to include any situation in which the 'relationship between the parties' is 'sufficiently close' to supply preclusion." (quoting *Nabisco, Inc. v. Amtech Int'l, Inc.*, 95-CV-9699, 2000 WL 35854, at *6 (S.D.N.Y. Jan. 18, 2000))). Thus, Plaintiff cannot evade the effects of his dismissal against ADA Chartier simply by naming closely connected government officials as new defendants. *See Marshall v. Nat'l Ass'n of Letter Carriers BR36*, No. 03-CV-1361, 2003 WL 22519869, at *9 (S.D.N.Y. Nov. 7, 2003) ("Here, the new defendants, as other government agencies, have a sufficiently close relationship to the earlier defendants to be considered in privity where the plaintiff . . . is the same . . . ."). As then-District Judge Parker noted, in language directly applicable here, Defendants County of Westchester and DiFiore are "entitled to *res judicata* because government officials sued in their official capacities are generally considered to be in privity with the governmental entity that they serve." *Waldman*, 39 F. Supp. 2d at 382; *see also Stancuna v. Sherman*, ___ F. Supp. 2d ___, No. 07-CV-491, 2008 WL 2566750, at *4 (D. Conn. June 27, 2008) (stating that public officials sued in official capacity are in privity with the entities that employ them); *O'Connor v. Pierson*, 482 F. Supp. 2d 228, 231 (D. Conn. 2007) (same); *Johnson v. County of Nassau*, 480 F. Supp. 2d 581, 607 (E.D.N.Y. 2007) (same).

Thus, because Plaintiff could have brought earlier the failure to train claim against the County and its officials, and because Plaintiff dismissed with prejudice the official capacity claim against ADA Chartier, Plaintiff cannot now claim liability of any kind against the County or any of it officials. *See Waldman*, 39 F. Supp. 2d at 381 ("Res judicata is available to a newly named defendant with a close or significant relationship to a defendant previously sued, when

the claims in the new action are essentially the same as those in the prior action and the defendant's existence and participation in the relevant events was known to the plaintiff."); *see also Resource N.E. of Long Island, Inc.*, 28 F. Supp. 2d at 793 (finding plaintiff barred from "relitigating in a subsequent action . . . an issue clearly raised in a prior action . . . and decided against that party *or those in privity*, whether or not the tribunals or causes of action are the same." (emphasis in original and internal quotation marks omitted)).

It is, moreover, of no legal import that Plaintiff's counsel might have failed to see this consequence at the time of stipulating to the dismissal with prejudice. *See Storey*, 347 F.3d at 385 n.12 ("[I]nadvertent error (if it was error) to allow a judgment with prejudice to be entered does not prevent that judgment from being 'on the merits.'" (internal quotation marks omitted)). It was Plaintiff's counsel – not the Court – that triggered the dismissal with prejudice in favor of the County Defendants. The Second Circuit has been clear that Plaintiff "is bound by his attorney's decision to sign the stipulation of withdrawal." *Samuels*, 942 F.2d at 837. "*Res judicata* may not be avoided on the basis of . . . an attorney's ill-considered decision to enter into an all-encompassing stipulation of withdrawal with prejudice." *Id*. Accordingly, County Defendants' Motion is granted as to the Defendants County of Westchester and DiFiore.[8] Because Defendant Pirro is sued in her individual capacity, however, she is not deemed to be in privity with her former government employer and therefore cannot be dismissed on the same res

---

[8] County Defendants raise several other persuasive arguments that might well independently lead to their dismissal. These include failure to state a plausible claim for municipal liability against the County of Westchester and redundancy as against Janet DeFiore because she is sued only in her official capacity, *see Graham,* 473 U.S. at 167 n.14. The Court does not reach any of these arguments, however, because these Defendants are entitled to repose based on Plaintiff's dismissal with prejudice against ADA Chartier.

11

judicata ground.[9]

C.  Qualified Immunity for Defendant Pirro

Plaintiff explains that his cause of action against Defendant Pirro, in her individual capacity, is for "direct personal involvement by Ms. Pirro in . . . failure to train" assistant district attorneys "in regard to changes and developments in federal, state, and local laws." (Pl.'s Opp. 3.)[10]  Plaintiff faces an uphill battle because "failure to train claims are usually maintained against municipalities, not against individuals." *Sanville v. McCaughtry*, 266 F.3d 724, 739 (7th Cir. 2001); *see also Phillips v. Roane County*, 534 F.3d 531, 544 (6th Cir. 2008) ("While an individual supervisor may still be held liable in his or her individual capacity under a failure-to-train theory, the [Plaintiff] must point to a specific action of each individual supervisor to defeat

---

[9] Plaintiff's claim against Defendant Pirro is different than, although premised on, any claim he would have had against ADA Chartier.  In other words, Plaintiff's failure to train claim against Defendant Pirro depends on Plaintiff being able to show that ADA Chartier did something wrong.  While the dismissal with prejudice causes claim preclusion (res judicata) to attach against the County of Westchester and any official-capacity Defendants in privity with it, discussed *supra*, it does not give rise to issue preclusion (collateral estoppel) for Defendant Pirro in her *individual* capacity.  *See Schenk*, 1997 WL 31400, at *7 ("[B]ecause the voluntary order of dismissal in [the prior litigation], by its very nature, was not accompanied by findings of fact or conclusions of law, it cannot have preclusive effect, under the doctrine of collateral estoppel, on this successive action."); *see also Motrade v. Rizkozaan, Inc.*, No. 95-CV-6545, 1998 WL 108013, at *5 (S.D.N.Y. Mar. 11, 1998) ("To have a preclusive effect on specific issues or facts, however, a voluntary dismissal also must be accompanied by specific findings sufficient for a subsequent court to conclude that certain matters were actually decided."); *Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir. 1994) (explaining differences between claim preclusion and issue preclusion).

[10] Plaintiff identifies the relevant allegation in his complaint against Defendant Pirro as Paragraph 63.  (Pl.'s Opp. 3.)  It states: "The [complained-of] customs, policies, usages, practices, procedures and rules of the Westchester County District Attorney's Office, under the direction of former District Attorney Jeanine Pirro, included, but were not limited to, failing to properly train Assistant District Attorneys in regard to changes and developments in federal, state, and local laws and the interpretations thereof by courts." (SAC. ¶ 63.)

a qualified immunity claim.").

Defendant Pirro invokes qualified immunity, a doctrine that reflects an attempt to balance "not only the importance of a damage remedy to protect the rights of citizens, but also the need to protect officials who are required to exercise discretion and the related public interest in encouraging the vigorous exercise of official authority." *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982) (internal quotation marks omitted). It operates to shield a government employee sued "individually" (in a personal capacity) from suits for damages under Section 1983 unless the complained-of conduct violated clearly established rights of which an objectively reasonable official should have known. *See Harlow*, 457 U.S. at 818; *Walentas v. Lipper*, 862 F.2d 414, 421 (2d Cir. 1988).[11]

The Supreme Court has articulated a two-part test for determining the applicability of qualified immunity. *See Saucier v. Katz*, 533 U.S. 194, 200 (2001); *Anderson v. Creighton*, 483 U.S. 635 (1987); *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 250 (2d Cir. 2001). The first inquiry is "whether a constitutional right would have been violated on the facts alleged." *Saucier*, 533 U.S. at 200. The second inquiry, reached only if the violation is established, is "whether the right was clearly established." *Id.* Because the privilege is

---

[11] Defendant Pirro goes so far as to assert absolute immunity. (County Defs.' Mem. of Law in Supp. of Renewed Mot. to Dismiss 10.) Absolute immunity is available to prosecutors, but only for prosecutorial tasks and not for a prosecutor's acts of investigation or administration. *See Imbler v. Pachtman*, 424 U.S. 409, 430-31 & n.33 (1976); *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994); *Ying Jing Gan v. City of New York*, 996 F.2d 522, 530-31 (2d Cir. 1993) (holding that only qualified immunity applies to those actions "not integral either to a decision of whether or not to institute a prosecution or to the conduct of judicial proceedings"). Regardless, the Court need not address absolute immunity because qualified immunity protects Defendant Pirro here. *See Burns v. Reed*, 500 U.S. 478, 486-87 (1991) ("The presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties.").

13

"*immunity from suit* rather than a mere defense to liability," *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985), the Supreme Court "repeatedly ha[s] stressed the importance of resolving immunity questions at the earliest possible stage in litigation," *Hunter v. Bryant*, 502 U.S. 224, 227 (1991); *see also Saucier*, 533 U.S. at 201.[12]

Here, Defendant Pirro asserts that her qualified immunity can be decided as a motion to dismiss because it is a purely legal question whether Plaintiff has asserted violation of a cognizable constitutional right. (County Defs.' Suppl. Mem. of Law Pursuant to Section 3(c) of Judge Colleen McMahon's Indiv. Practices with Respect to Qualified Immunity ("Defs.' QI Mem.") at 2.) In Defendant Pirro's view, because the Second Amended Complaint "does not allege a cognizable federal claim, the defendant is entitled to have [her] qualified-immunity motion granted promptly as a matter of law." *X-Men Sec., Inc. v. Pataki*, 196 F.3d 56, 66 (2d Cir. 1999).

Under *City of Canton v. Harris*, a claim based on failure to train or supervise government employees requires that the failure amount to "deliberate indifference" to the rights of citizens with whom the employees will interact. 489 U.S. 378, 388 (1989); *see also Wray v. City of New*

---

[12] Plaintiff claims that deciding qualified immunity on a motion to dismiss is "generally disfavored," but he misreads cases stating merely that ordinarily motion to dismiss standards will not always suffice to determine the existence of qualified immunity. *See Liffiton v. Keuker*, 850 F.2d 73, 76 (2d Cir. 1988) (noting that court must accept as true all allegations in complaint in determining applicable immunity on motion to dismiss); *Green v. Maraio*, 722 F.2d 1013, 1019 (2d Cir. 1983) (affirming 12(b)(6) dismissal where "basis for finding qualified immunity applicable is established by the complaint itself"). There is no special Rule 12(b)(6) standard for determining qualified immunity: As with all motions to dismiss under Fed. R. Civ. P. 12(b)(6), "'[u]nless the complaint states a compensable claim for relief . . . , it should not survive a motion to dismiss.'" *Harlow*, 457 U.S. at 808 (*quoting Butz v. Economou*, 438 U.S. 478, 507-08 (1978)); *see also Green*, 722 F.2d at 1019 (affirming grant of motion to dismiss on qualified immunity grounds)*.*

*York*, 490 F.3d 189, 195 (2d Cir. 2007) ("'Deliberate indifference' involves the conscious disregard of the risk that poorly-trained employees will cause deprivations of clearly established constitutional rights."). The Second Circuit has explained that a showing of deliberate indifference has three requirements: (1) "that a policymaker knows 'to a moral certainty' that her employees will confront a given situation;" (2) "that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation;" and (3) "that the wrong choice by the . . . employee will frequently cause the deprivation of a citizen's constitutional rights." *Walker v. City of New York*, 974 F.2d 293, 297-98 (2d Cir. 1992); *see also Wray*, 490 F.3d at 195-96 (applying *Walker*). For purposes of this Motion to Dismiss, the Court assumes that Plaintiff could satisfy all three prongs. *See Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 130 n.10 (2d Cir. 2004) ("It is unlikely that a plaintiff would have information about the city's training programs or about the cause of the misconduct at the pleading stage, and therefore need only plead that the city's failure to train caused the constitutional violation.").

    *Amnesty America* is the only case Plaintiff cites in his briefing on the qualified immunity issue, and Plaintiff asks the Court to end its analysis there. But in *Amnesty America*, the plaintiff raised a failure to train claim *against the municipality* and, therefore, qualified immunity did not arise at all as an issue in the case. It is precisely because Defendant Pirro might be entitled to qualified immunity that Plaintiff is required to identify a clearly established right that Defendant has violated. Although it has not been expressly stated in the Second Circuit, the Court assumes that a failure to train claim can be asserted against an individual. *Doe v. Taylor Ind. Sch. Dist.*, 15 F.3d 443, 453 (5th Cir. 1994) ("We see no principled reason why an individual to whom the

15

municipality has delegated responsibility to directly supervise the employee should not be held liable under the same standard."); *Brown v. Grabowski*, 922 F.2d 1097, 1119-20 (3d Cir. 1990) (considering failure to train claim against police chief in individual capacity). *But see Riley v. Newton*, 94 F.3d 632, 637 (11th Cir. 1996) ("[*City of Canton*] provides the standard for when a municipality can be held liable for a failure to train in general; it does not speak at all to when an individual is responsible for failure to train his subordinates . . . ."). Even so, Plaintiff must still allege something more to defeat the qualified immunity to which Defendant Pirro is entitled. *See Phillips*, 534 F.3d at 544 ("While an individual supervisor may still be held liable in his or her individual capacity under a failure-to-train theory, [plaintiff] must point to a specific action of each individual supervisor to defeat a qualified immunity claim."); *Sanville*, 266 F.3d at 740 (affirming dismissal against supervisors where Plaintiff failed to allege facts sufficient to show supervisors' deliberate indifference); *Riley*, 94 F.3d at 637 (affirming immunity from suit to individual supervisor where plaintiff had not cited any specific law that the supervisor defendant's inaction might have violated); *Brown*, 922 F.2d at 1119 (ordering judgment for police chief defendant sued in individual capacity where plaintiff failed to show violation of clearly established right so as to defeat qualified immunity).

Plaintiff's attempt to defeat Pirro's qualified immunity ultimately rests on his claim that she was "clearly obligated to train her ADAs about an extremely important and well-publicized change in federal law concerning the right of retired law enforcement officers to carry firearms." (Pl.'s Suppl. Mem. of Law in Opp. to Jeanine Pirro's Mot. for Qualified Immunity ("Pl.'s Suppl. Mem.") 4.) Plaintiff has not, however, identified any legal support for his claim that Pirro had a constitutional obligation to conduct such training. *See Riley*, 94 F.3d at 637 ("Plaintiffs having

16

cited no specific law which [supervisor's] inaction might have violated, he is entitled to immunity from suit."). Even if such an obligation existed, Plaintiff has not offered any support for the notion that such "right was clearly established," as would be required by the second inquiry in the qualified immunity analysis. *See Saucier*, 533 U.S. at 200; *see also Muhammad v. Wainwright*, 839 F.2d 1422, 1424 (11th Cir. 1987) ("General propositions have little to do with the concept of qualified immunity."). A district attorney's decision about how to train her staff is precisely the sort of managerial judgment that the Supreme Court considered in remarking about "the injustice, particularly in the absence of bad faith, of subjecting to [individual] liability an officer who is required by the legal obligations of his [or her] position, to exercise discretion." *Scheuer v. Rhodes*, 416 U.S. 232, 240 (1974).

Accordingly, Defendant Pirro has invoked her qualified immunity, and Plaintiff has failed to make sufficient showing to defeat it—indeed, failed even to state any support that the claimed inaction amounted to a constitutional violation. Therefore, all claims against Defendant Pirro are dismissed.[13]

---

[13] Plaintiff offers to further amend his complaint "to flesh out the allegations (i.e., that federal law had been changed to permit retired law enforcement personnel to carry weapons, that ADA Chartier was never trained in this change in the law, that ADA Chartier confronted a situation in which he had to decide whether plaintiff had committed a crime, and that it could have been anticipated that failing to train ADAs is an important change in federal law [that] would eventually lead to a civil rights violation)." (Pl.'s Suppl. Mem. 3 n.2.) A court may deny a motion to amend where the amendment would be futile, as measured by whether the proposed amended complaint could withstand a motion to dismiss pursuant to Rule 12(b)(6). *See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 87-88 (2d Cir. 2002). To survive a motion to dismiss, Plaintiff's pleading would have to invoke a statute or court case requiring a district attorney to train her staff on the Law Enforcement Officers Safety Act of 2004 in some particular way; Plaintiff's mere recital that it was an important change in the law is not enough. *See Riley* at 637 (where plaintiff cited no statute that defendant's failure to train may have violated, defendant was entitled to immunity from suit). Because none of the amendments offered would alter the Court's conclusion in this Motion that Defendant has failed

### III. Conclusion

For the reasons stated herein, the Renewed Motion to Dismiss by Defendants County of Westchester, Janet DiFiore, and Jeanine Pirro is granted.

The Clerk of the Court is respectfully directed to terminate the motions (Dkt. No. 22) and to terminate the County of Westchester, Janet DiFiore, and Jeanine Pirro as Defendants to this case.

SO ORDERED.

Dated:    September 30, 2008
           White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

to submit any clearly-established right that he asserts Defendant Pirro has violated, such amendment would be futile and Plaintiff's Motion to Amend is denied.

18

<u>Service List by ECF:</u>

Rose M. Weber, Esq.
225 Broadway, Suite 1608
New York, NY 10007
rose_weber@juno.com

William J. Florence, Jr., Esq.
One Peekskill Place, Suite 300
Peekskill, NY 10566
williamflorence@mac.com

Shannon S. Brady, Esq.
Westchester County Attorney's Office
148 Martine Avenue, Room 600
White Plains, NY 10601
sbs2@westchestergov.com