UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
WALI MUHAMMAD,

                              Plaintiff                    06 CV 1899 (RPP)

        - against -

                                                           **OPINION AND ORDER**

THE CITY OF PEEKSKILL, P.O. CHRISTOPHER
VAZEOS, P.O. JOHN KOLESAR, P.O. ANDREW
POLAY, DET. CHARLES WASSIL, DET. RALPH
D'ALISON, SGT. PHILLIP BOYD, MARK
O'BUCK, and P.O.s JOHN and JANE DOE #1-10,
individually and in their official capacities, (the
names John and Jane Doe being fictitious, as the true
names are presently unknown),

                              Defendants.
-------------------------------------------------------------X

**ROBERT P. PATTERSON, JR., U.S.D.J.**

       This case arises out of an incident in March 2005.  Plaintiff Wali Muhammad alleges that police officers working for the Peekskill Police Department ("Defendants") wrongfully arrested, detained, and prosecuted him in violation of his civil rights.  He brought this suit under 42 U.S.C. §§ 1983 and 1988, alleging false arrest, malicious prosecution, violations of the equal protection clause, and malicious abuse of process.

       Defendants now move for summary judgment, renewing a previous summary judgment motion which was granted in part and denied in part, without prejudice to renewal at the conclusion of discovery.  *Muhammad v. City of Peekskill, et al.*, No. 06-cv-1899, 2008 WL 4525367, at *8 (S.D.N.Y. Sept. 30, 2008).  The only issue raised by the instant motion is whether Plaintiff has established that a genuine issue of material fact exists as to whether the police officer Defendants are entitled to qualified immunity in connection with the decision to prosecute Mr. Muhammad.

**I. Background**

**A. Facts**[1]

Mr. Muhammad is an African-American male; at the time of this incident, he was a retired state corrections officer. On March 25, 2005, Mr. Muhammad was driving his car on Route 9 in or near Peekskill, NY. Earlier that same day, the Ossining Village Police had received a report of a menacing incident on that road in which a driver of a vehicle had lifted his shirt to display a firearm. The incident was broadcasted to surrounding jurisdictions. The information broadcasted included vehicle information (year, make, model, color, and license plate) that the Ossining Police had received from the complainant and from the NYSPIN computer system.

Peekskill Police Officer Christopher Vazeos, a defendant in this action, received this broadcast. He observed a car traveling on Route 9 matching the description broadcast and executed a heightened traffic stop (i.e. with lights and sirens) after having called for backup. Plaintiff was wearing a firearm on his hip, which he promptly reported to Officer Vazeos. Plaintiff also told Officer Vazeos that he was a retired state corrections officer. During this stop, Officer Vazeos conducted a routine check of license and registration. He determined that the vehicle registration had been suspended for failure to insure, arrested Mr. Muhammad for driving with a suspended license, advised him that the Ossining Police would come to investigate the menacing incident, and transported Mr. Muhammad to Peekskill Police Headquarters.

---

[1] The general outline of facts is taken from Judge Karas' opinion on the prior summary judgment motion. *Id*., at *1 - *2. Defendants neglected to file a Rule 56.1 statement of undisputed facts with their motion for summary judgment; instead, they filed it with their reply papers. The statement is not particularly comprehensive and does not provide any factual description of the incident at the center of this case. While Plaintiff has urged the Court to exercise its discretion, pursuant to Local Rule 56.1 to dismiss the Defendants' motion, the initial failure to prepare the statement was promptly corrected and appears inadvertent. Therefore, the Court declines to dismiss this motion for summary judgment on this ground.

Once back at Peekskill Police Headquarters, Officer Vazeos spoke with Assistant District Attorney ("ADA") Jeffrey Chartier.  ADA Chartier instructed Officer Vazeos to charge Plaintiff with unlawful possession of a loaded weapon and driving with suspended registration, which Officer Vazeos then did.  Plaintiff was held at the Westchester County Jail for four days and had criminal proceedings initiated against him, which required him to make court appearances and to defend himself in these court proceedings.  In December 2005, all criminal charges against Plaintiff were dropped, on the motion of the prosecutor.  Both parties agree that Plaintiff, as a retired corrections officer, was in fact allowed to carry a concealed firearm without a license, because of a federal law enacted in January 2004 (HR 218, codified as 18 U.S.C. § 926C).

**B. Procedural History**

In March 2006, Mr. Muhammad filed a complaint, naming the City of Peekskill, Officer Vazeos, and several John Doe Police Officers as defendants.  The Defendants' first motion for summary judgment was filed pursuant to Judge McMahon's individual practices, which provide for a pre-discovery summary judgment motion on the issue of qualified immunity (and which do not preclude parties from filing subsequent motions for summary judgment).  Judge Karas granted the Defendants' motion in part.  Judge Karas determined that the police officers were entitled to qualified immunity for their actions in connection with the traffic stop and the arrest and transportation of Mr. Muhammad to Peekskill Police Headquarters.  As to the police officers' role in charging Mr. Muhammad with illegal possession of a firearm, Judge Karas concluded that police officials are generally entitled to qualified immunity if they rely on prosecutorial advice, as Defendants asserted here, in deciding to bring charges against an individual; here, however, plaintiff alleged that the police officers falsified information that they presented to ADA Chartier in seeking his decision as to whether to charge Mr. Muhammad with

3

any crimes. Judge Karas held that if Plaintiff could demonstrate that the police officers misstated the facts to ADA Chartier and that these misstatements "were necessary to the finding of probable cause," the Defendants would not be entitled to qualified immunity. Because the Plaintiff had not yet had an opportunity to conduct discovery that would help him prove his allegations, Judge Karas denied the Defendants' motion for summary judgment as to this claim.

## II. Legal Standard

Federal Rule of Civil Procedure 56 provides that "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The movant bears the burden of showing that no issues as to material facts exist, but if the movant makes a prima facie case, the non-movant must rebut. *Segal v. City of New York*, 459 F.3d 207, 211 (2d Cir. 2006). Neither party may "rest on allegations in the pleadings." *Salahuddin v. Goord*, 467 F.3d 263, 273 (2d Cir. 2006). Instead, both movant and non-movant "must point to specific evidence in the record to carry [their] burden on summary judgment." *Id*.

## III. Discussion

Plaintiff has completed discovery, and Defendants now move this Court to grant summary judgment in their favor on the remaining claim. The only issue is whether the police officer Defendants are entitled to qualified immunity for their actions in charging Mr.

Muhammad, pursuant to New York Penal Law 265.02(4)[2] with illegal possession of a loaded firearm.

During his deposition by Plaintiff, ADA Chartier testified that the police officers told him that Mr. Muhammad claimed to have been "on the job" and "stated that he knew he . . . should've had a license to carry the gun. He was going to get it and hadn't gotten it." Chartier Depo., Jun. 19, 2009, at 26: 4-16. He testified that the police officers also told him that the ammunition found with Mr. Muhammad's firearm "had some coating on it that they believed it may have been like an armor piercing bullet . . . otherwise known as a cop killer type bullet[]." *Id.*, at 19, 21-24. He stated that the first he heard about the federal law – H.R. 218, enacted in January 2004 – allowing Mr. Muhammad to carry the weapon without a license was from Mr. Muhammad's lawyer some days later at a court appearance in Mr. Muhammad's criminal case, and that had he known about this law earlier, he "absolutely" would have researched the law to determine whether it precluded charging Mr. Muhammad for unlawful possession of a loaded firearm. *Id.*, at 26: 4-9; *Id.*, at 28: 5-14. Moreover, he also confirmed that when he learned of the law, his research convinced him to drop the charges of unlawful possession of a loaded firearm. *Id.*, at 69:7 – 70:5. He also confirmed that he discussed with the police officers the possibility of letting the Ossining Police take the entire case, that he used the possession of a weapon charge as a holding charge, that he typed the felony complaint on a computer, and that he made the decision to so charge the Plaintiff. *Id.*, at 34-35, 52-53, 62. He explained that this decision was his to make: "Charging decisions are what we do everyday as prosecutors." *Id.*, at 38: 25-39:1. He also explained that in Westchester at that time, a defendant charged with a

---

[22] N.Y. Penal Law § 265.02(4), criminalizing possession of a loaded firearm except in a person's home or place of business, was repealed in 2006.

felony would have been held without bail, pursuant to New York Criminal Procedure Law 530.20(2), until a rap sheet could be obtained. *Id*., at 48-49.

Mr. Muhammad testified at his deposition that he told the arresting officer that he was "authorized to carry my firearm on my badge and ID." Muhammad Depo., at 22: 10-11. He also testified that he carried his firearm without a license because he was aware of the federal law since July 2004. *Id*., at 70: 20-21. He did not testify that he explained to the arresting officer that this authorization was embodied in a federal law exempting certain former law enforcement officers from licensing requirements. He contended, however, that he was not given any opportunity to explain why he was authorized to carry an unlicensed firearm because before he could say anything further he was ordered out of the vehicle and handcuffed. *Id*., at 92: 2-9. Nowhere in Plaintiff's deposition did he state that he told any of the Defendants that a federal law authorized him to carry an unlicensed firearm.

As discussed above, ADA Chartier testified that if he had known about the federal law, he would have researched it and this research would have led him not to charge Plaintiff (as it ultimately led him to drop charges) with unlawful possession of a loaded firearm. At no point during discovery, which the Court authorized for the purposes of the renewed motion for summary judgment, did Plaintiff or Defendant elicit any testimony from ADA Chartier that Plaintiff's statement that, as a retired correctional officer, he was "authorized to carry a firearm on his badge and ID," would have been sufficient to cause Chartier to research whether any law created such authorization. Nor was ADA Chartier asked by Plaintiff's counsel whether he relied upon the police officers' statement that Plaintiff "knew he . . . should've had a license to carry the gun" in deciding to charge Plaintiff. Indeed, Plaintiff did not elicit any evidence showing reliance by ADA Chartier upon any of the alleged misrepresentations made by the

police officers nor did Plaintiff elicit any evidence that ADA Chartier's decision to charge Plaintiff with a felony under N.Y. Penal Law 265.04(2) was influenced in any way by any statement by a police officer.[3]  In his brief, Plaintiff argues that the Defendants "affirmatively presented plaintiff as someone who was masquerading as a police officer, knew and admitted that he was carrying an illegal weapon, and had deliberately loaded the gun with cop-killer bullets" and that, "[a]t the very least, this creates an issue of material fact as to the degree to which this colored ADA Chartier's view of the entire situation."  Plaintiffs' Opp., at 5.  But Plaintiff at the deposition failed to develop any evidence that ADA Chartier was influenced in his charging decision by any of these misrepresentations.  Under New York law, Plaintiff was not allowed to carry a loaded weapon in his car without a permit.  *See People v. Carter*, 473 N.E.2d 6, 9-10 (N.Y. 1984) (Witness's "testimony that defendant drew the gun from his pocket, when coupled with the police testimony that the gun was loaded and operable, was sufficient, if accepted as true, to establish every element of the crime with which defendant was charged [criminal possession of a loaded weapon].").  ADA Chartier stated that he was aware Plaintiff was a retired corrections officer and that Plaintiff did voluntarily tell them that he had a weapon

---

[3] At oral argument, when this issue was raised, and by letter after oral argument, Plaintiff sought leave to obtain an additional affidavit from ADA Chartier "stating what he would have done had he been advised by defendants that plaintiff was claiming a right to carry a firearm based on his retirement badge and his identification as a retired correction officer."  Pl. Letter (Dec. 18, 2009), at 1.  Plaintiff testified twice that he told the police officers only that he was authorized to carry a firearm with his badge (retirement) and ID.  Muhammad Depo. at 22: 8-22.  Counsel for Plaintiff was put on notice by the Court's summary judgment of decision of September 2008 that Plaintiff would need to establish, in discovery, that the police officers "allegedly false statements were shared with ADA Chartier" and that these statements and omissions were necessary to a finding of probable cause and "were material to [ADA Chartier's] advice to the Peekskill Police Defendants."  M*uhammad*, 2008 WL 4525367, at *7.  Plaintiff never testified, however, that he told the police that a federal law authorized him to carry a gun without a permit.  Absent ADA Chartier being told that a federal law authorized Plaintiff to possess a firearm, there is no indication in the record that ADA Chartier would have known to look for this authorization in federal law.  ADA Chartier testified that he was aware that Plaintiff was a retired state corrections officer, Chartier Depo. at 68, which subsumes having a badge and ID, and that no one told him that Plaintiff had said that under federal law he was permitted to carry a gun and that if anyone had said that he would have looked it up.  Chartier Depo. at 27-28.  On this record, especially in light of ADA Chartier's knowledge that the Plaintiff was a retired corrections officer, Plaintiff's request for an opportunity to obtain an affidavit from ADA Chartier, the content of which is unstated, has not been shown to be other than a wild goose chase and is denied.

on his person. Chartier Depo., at 72. He also testified that he examined the bullets and although he was not an expert concluded that it would have been reasonable to believe that they were the type of bullets known as "cop killer bullets."[4] *Id.*, at 25. ADA Chartier testified, however, that he did not charge defendant with illegal ammunition because "it did not fit . . . with the intent unlawfully use portion" of the statute, see N.Y. Penal Law 265.01(8), but instead chose to charge Plaintiff with illegal possession of a loaded firearm, pursuant to N.Y. Penal Law 265.02(4). *Id.*, at 20. Unlike the armor-piercing ammunition prohibition, the statute criminalizing possession of a loaded firearm requires knowledge, not intent to unlawfully use. Since Plaintiff's discovery has failed to raise a genuine issue of material fact suggesting that the police officers' misrepresentations and omissions were causally related to ADA Chartier's decision to charge Plaintiff with illegal possession of a loaded firearm, the Defendants' motion for summary judgment is GRANTED. No claims remain, and judgment is entered for the Defendants.

IT IS SO ORDERED.

Dated: New York, New York
February 3, 2010

*signature*

Robert P. Patterson, Jr.

U.S.D.J.

---

[4] Plaintiff testified that the bullets were different from regular ammunition and had "[a] little more fire power than normal ammunition." Muhammad Depo. at 73: 17-18.

Copies of this order were faxed to:

**Rose Minna Weber**
Rose M. Weber Law Office
225 Broadway
Suite 1607
New York , NY 10007
212-748-3355
Fax: (212)-233 5633

**William J. Florence , Jr.**
William J. Florence, Jr.
One Park Place, Suite 300
Peekskill , NY 10566
(914)-737-7001
Fax: (914)-737-7077